UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| FIRST SPECIALTY INSURANCE CORP.,<br>*Plaintiff,*<br><br>v.<br><br>SUPREME CORPORATION, A SUBSIDIARY OF SUPREME INDUSTRIES, INC.,<br>*Defendant.* | Case No. 3:12-CV-186<br>Consolidated cases |
| SUPREME INDIANA OPERATIONS, INC.<br>*Plaintiff,*<br><br>v.<br><br>FIRST SPECIALTY INSURANCE CORP.,<br>*Defendant.* | Case No. 3:14-CV-1613<br>Consolidated cases |

### RESPONSE IN OPPOSITION TO MOTION TO COMPEL

The Court should not compel Supreme Corporation n/k/a Supreme Indiana Operations, Inc. ("Supreme") to search on every server and in every file cabinet to overturn every scrap of data that pertains to its litigation and settlement of an underlying multi-million dollar lawsuit that its insurer, First Specialty Insurance Corp. ("First Specialty"), refused to defend. Supreme has fully answered the disputed discovery requests, and First Specilaty's motion to compel should therefore be denied.

I. BACKGROUND

This is an insurance coverage dispute. In February 2012, King County Washington sued Supreme alleging various defects and problems with 35 medium duty buses Supreme manufactured and sold to King County for public transit vehicles. The Complaint filed by King County was a sweeping, 18-page document alleging a host of claims and damages, including "eye and throat irritation, as well as nausea and headaches" allegedly suffered by drivers and passengers of the buses. Supreme tendered defense of the matter to First Specialty, who denied coverage and initiated a declaratory judgment in this Court (the first of these consolidated actions).

On cross-motions for summary judgment, Supreme prevailed, and this Court ruled that First Specialty breached its duty to defend. *See* [DE 34]. In the meantime, Supreme had settled the underlying King County case. It filed the second of these consolidated actions to recover its damages from First Specialty. Including recoverable interest and legal fees, those damages are estimated at more than $5.7 million. According to Rule 26, Supreme disclosed its damages computation and provided supporting records. *See Supplemental Disclosures* (**EXHIBIT 1**).

Supreme has also responded to interrogatories and requests for production. The requests served by First Specialty, along with Supreme's original responses, were filed with the Court as exhibits to First Specialty's motion. First Specialty did not file Supreme's supplemental responses, but with its motion and brief, First Specialty does acknowledge that Supreme supplemented its responses to provide

2

attorney billing records from the underlying King County litigation. This production was made as a compromise growing out of informal efforts to resolve the dispute embodied in First Specialty's motion to compel. Details about those informal efforts—along with copies of some of the associated correspondence—are also described in First Specialty's filings. Further background details will be addressed below.

## II. LAW AND ANALYSIS

According to First Specialty, there are three issues in this case.[1] Viewed through the lens of those issues, Supreme has fairly responded to all outstanding requests that are "relevant to any party's claim or defense and proportional to the needs of the case." FED. R. CIV. P. 26(b)(1).

The motion concerns nine requests for production: Requests 2-7, 11-12, and 14. *See* [DE 42-1 at 5 & DE 42-5]. For unknown reasons, First Specialty also submitted its interrogatories and Supreme's answers to them as exhibits to its motion. But it does not seek any relief concerning the interrogatories, so Supreme will not discuss them in this response. Instead, Supreme will address the nine contested requests in connection with the three case issues identified by First Specialty.

---

[1] Supreme does not necessarily agree with First Specialty's description or listing of the issues, but First Specialty's own analysis is an appropriate measuring stick for the permissible scope of its discovery requests. It identifies the issues as (1) costs of defense, (2) number of "occurrences," and (3) how much of the settlement was paid for "bodily injury." [DE 42 at 2].

3

### A. The costs of defense are not at issue in this motion to compel.

The Court has already ruled that First Specialty owed Supreme a duty to defend, but First Specialty's motion identifies "the costs of defending the underlying litigation" as an issue that remains. Supreme has disclosed those costs—both through the disclosures attached as Exhibit 1 and supporting records. *See* Response to Request No. 8 (DE 42-7). Further, as First Specialty concedes, it provided even more supporting records in order to compromise a potential discovery dispute. There is no need for further discovery on this subject.[2]

### B. The disputed discovery requests do not address the number of "occurrences" in a proportional way.

First Specialty claims the next important issue is "the number of 'occurrences' in the underlying litigation and thus the number of Self-Insured Retentions ('SIR's') Supreme must satisfy before it can recover any indemnity or costs of defense." In other words, First Specialty intends to argue the King County lawsuit was more than one "occurrence" under the controlling insurance policy. As it was one lawsuit, defended as one and settled as one—all arising out of one sale transaction to one party, who was the one and only plaintiff—Supreme believes it should be treated as one "occurrence." The Court may have to pass on that dispute in the future because it does make a difference in computing the amount of

---

[2] In fact, Supreme questions whether the discovery dedicated to it thus far is proportional to the needs of the case. After all, in measuring duty-to-defend damages, the Seventh Circuit has specifically rejected a "detailed, hour-by-hour review after the fashion of a fee-shifting statute." *Medcom Holding Co. v. Baxter Travenol Labs., Inc.*, 200 F.3d 518, 521 (7th Cir. 1999). Instead, courts should look to the fees as a whole and determine if they are commercially reasonable, noting that when an indemnitee pays fees with its own funds and no guarantee of recovery, those fees are presumptively reasonable. *Id; see also Taco Bell Corp. v. Cont'l Casualty Co.*, 388 F.3d 1069, 1075-76 (7th Cir. 2004).

4

Supreme's recoverable damages. But that legal dispute has no real bearing on the discovery requests.

None of the disputed requests ask anything about "occurrences," so it's not as if Supreme refused to provide this information. In fact, even if First Specialty had expressly requested records relating to the number of "occurrences," it would be unlikely for a manufacturer defending itself in a product liability lawsuit to create, posses, or obtain any records that speak directly to the issue of how to count "occurrences" for insurance purposes. Instead, First Specialty would have to look at raw data concerning the underlying lawsuit, such as its pleadings (which are publicly available) or discovery exchanged in it (which has not been requested), or its settlement agreement (which has been produced). That's not what First Specialty asked for. Instead, it asked for everything under the sun.

1. *Most of the requests are overbroad.*

Request No. 2 is emblematic of First Specialty's overly broad requests. It seeks "[a]ny and all Documents or Communications with King County related to the Claim." First specialty defined the terms used in that request as follows:

> 5. "Communication" means all discussion, conversations, interviews, meetings, negotiations, letters, memoranda, cablegrams, mailgrams, telegrams, telexes, cables, electronic mail or transmission or other forms of written or verbal intercourse, however transmitted, including reports, notes, memoranda, lists, agendaand other Documents and records of Communications, and when used herein shall require a statement of the name of the individual who made the Communication, the Person(s) to whom it was made, the date it was made, and the form in which it was made.
>
> 6. "Document" means anything on which any information is fixed and can be perceived, reproduced or otherwise communicated, with or

without the aid of any machine or device, and regardless of the medium of expression in which any information is fixed (e.g., electronic, print, video, audio or other medium), including but not limited to material in the form of reports, studies, statements, testimony, minutes, speeches, notebooks, agreements, appointment calendars, working papers, graphs, drawings, computer models and programs, spreadsheets, books, manuals, brochures, memoranda, notes, correspondence, emails, diaries, bookkeeping entries and unpublished material, and shall also include, but not be limited to, originals, copies (with or without notes or changes thereon) and drafts.

This is a classic "fishing expedition" request. It is not a measured and appropriate request for information relevant to *any* issue, much less to the issue of occurrences. Rule 34 requires that requests for production describe the requested information "with reasonable particularity." FED R. CIV. P. 34(b)(1)(A). And if even if *something* that might fall under an overly broad request could be relevant to a claim or defense, courts will not compel a response when the request is not tailored to those relevant matters. *See, e.g., Ye v. Cliff Viessman, Inc.,* 2016 U.S. Dist. LEXIS 28882, at *14 (N.D. Ill. March 7, 2016) (denying motion to compel).

Furthermore, it bears repeating that this Court has already found First Specialty liable. All of the case issues identified by First Specialty—and the only issues that could possibly be relevant—go to computing the amount of Supreme's damages. In light of the limited scope of this litigation, Request No. 2 simply asks too much to be "proportional to the needs of the case." FED. R. CIV. P. 26(b)(1).

Request No. 7—which asks for *all of Supreme's internal* "Documents" and "Communications"—suffers from the same defects. In fact, this Request is so overly broad that First Specialty did not even limit it to the King County lawsuit. The suggestion that Supreme should open up its file rooms and computer servers to copy

6

every single one of its internal "Documents" and "Communications" would not make sense in any lawsuit. It is preposterous in a case where liability has already been determined. And, of course, it has nothing to do with "occurrences."

Request No. 5 is more of the same. It asks for all "Documents or Communications with any person or entity . . . . related to the Claim." In a case where only damages are left to be litigated, this also asks too much to be proportional to the case. The same is true for Request No. 11, which seeks, "all Documents or Communications related to Supreme's claim for indemnity. . . ," and Request No. 12, which asks for largely the same things in another way.

The recent *Ye* decision from a sister court in this Circuit explained the concept of proportionality when it comes to social media discovery. It denied a motion to compel, explaining it could "imagine a request more narrowly tailored to relevant content . . . . Perhaps one that is limited to a reasonable period of time and . . . that bears on the issues of liability and damages in this case. But it is not the Court's role to tailor or re-write the discovery." 2016 U.S. Dist. LEXIS at * 13. In the same way, this Court cannot re-write First Specialty's overly broad requests and should deny its motion to compel.

   2.   *Supreme responded to portions of requests that are not too broad.*

Requests 3 and 6 ask for settlement agreements from the King County case, and Request 4 asks for "contracts . . . related to the claim," which would include contracts of settlement. Those categories of documents probably do not help unpack the issue of "occurrences." But they are relevant discovery, and Supreme responded

7

to them by providing all settlement agreements. Still, First Specialty is not satisfied. It wants draft settlement agreements, e-mails, letters, and phone records evidencing settlement negotiations, along with any number of other settlement-related records that fall under its broad definition of "Documents" and "Communications." In fact, it wants "all contracts between Supreme and any person or entity," not just settlement agreements. (Requ. No. 4). Supreme objected to providing more than the settlement agreements for a variety of reasons, including the fact that any communications with its attorneys on such matters are privileged.

First Specialty dedicates most of its brief to arguing the privilege has been waived, but even if the Court could agree with this strained position, that does not require Supreme to open up its confidential attorney-client communications or any of the other swarms of documents that might fall under these broad requests. Rule 26(b)(1) still defines the scope of discovery. And on that score, this case is similar to *Equal Rights Ctr. v. Archstone-Smith Trust,* 251 F.R.D. 168 (D. Md. 2008). It involved an underlying settlement and consent decree from Archstone-Smith Trust, which had also filed cross-claims against another defendant, Niles Bolton's Associates, Inc. Niles Bolton's sought to discover all records that "concern or relate to the negotiation, execution and substantive terms of the settlement reached between [Archstone] and Plaintiffs." *Id.* at 169. The court granted a protective order forbidding this discovery.

The *Equal Rights Center* court found that the narrowing of issues caused by other litigation events affected the scope of discovery. It explained: "The issues between Archstone and NBA remaining in this case are limited. . . . NBA has failed to establish how a wholesale exploration of the settlement process between plaintiffs and Archstone falls within the scope of permissible discovery. The court is not willing to open the gate to expansive and costly discovery." *Id.* at 171-72. The same should be true here. The Court's declaratory judgment narrows the issues, and the settlement agreements have been produced. Any records that may reflect haggling over the settlement before it was reached will do nothing to illuminate the issue of "occurrences." In other words, First specialty "has not adequately established how what [the parties] said or were thinking during the course of its settlement discussions with plaintiffs will lead to admissible evidence." *Id.* at 171.

### 3. *The remaining requests indisputably invade the privilege*

Request 14 rounds out First Specialty's motion. In it, First Specialty asks for documents that itemize the indemnity portion of the damage claim. Supreme has provided its itemization of damages through its Rule 26 disclosures and supplements to them. (See Ex. 1). If First Specialty seeks still more with this request, then all that would remain are communications between Supreme and its attorneys or attorney work product outlining legal positions. No one argues Supreme should lose its privilege with the coverage counsel representing it in this case, even if minds could differ regarding the scope of Supreme's privilege with its attorneys in the underlying case. In fact, First Specialty's memorandum of law

specifically concedes that it is not seeking "any privileged materials or communications that pertain to coverage under the First Specialty policies." [DE 42-1 at 11 n.3]. As such, there is nothing more to be compelled in response to Request 14.

Requests 11 and 12—in addition to being objectionably overbroad—suffer from the same defect. In order to literally produce "all Documents or Communications" relating to Supreme's claims in this lawsuit, it would have to disclose its attorneys' mental impressions and its communications with counsel. These materials are not discoverable. In fact, none of these requests appropriately seek any non-privileged matter that would address the "occurrences" issue First Specialty has identified as central to this case.

## C. Supreme has already informed First Specialty it has no records regarding the allocation of settlement sums.

The final issue identified by First Specialty is the allocation of settlement sums to different damage claims, which may affect the availability of insurance coverage for those sums. In two requests that are not subject to First Specialty's motion, it asked Supreme to produce documents "relating to the allocation by Supreme of settlement amounts paid by it to types or categories of damages" (No. 15) and "relating to the allocation by King County" of the settlement to damages claims. (No. 16). Supreme responded that is possesses no responsive documents. [DE 42-7]. Those were fair requests. But because Supreme has no records relating to them, there is no way any records it might have in connection with the disputed requests could possibly be relevant to this allocation issue.

Thus, for many of the same reasons that the disputed requests are not relevant or proportional to the number of "occurrences" issue, they cannot be relevant or proportional to this final issue, either. Consider the *Equal Rights Ctr.* case, which also involved questions about indemnity for an underlying settlement and how to allocate the settlement funds. *Id.* at 171. Because Archstone-Smith revealed its position on allocation, the court was "not willing to open the gate to expansive and costly discovery." *Id.* at 171-72. Likewise, Supreme has already responded that it does not have records concerning allocation, and First Specialty has access to other evidence addressing the matter of how King County computed its damages claims. *See* [DE 25-1 at 5]. Although allocation may be an important issue for further discussion in this case, it does not justify any further response to the disputed discovery requests.

III. CONCLUSIONS

First Specialty has employed a kitchen-sink approach to discovery. It used expansive definitions for the terms in its requests; it served requests asking for everything imaginable; and it attached exhibits and made arguments in its motion relating to matters that are not even disputed. Rules 26 and 34 require a more tailored approach. After considering the issues that remain in this case where liability has already been decided—and factoring in the discovery Supreme has already provided—there is nothing to be compelled under the disputed requests. First Specialty's motion should be denied.

11

Respectfully submitted,

 **/s/ Michael J. Hays**
James M. Lewis (#15784-71)
Michael J. Hays (#23606-71)
TUESLEY HALL KONOPA, LLP
212 E. LaSalle Avenue, Suite 100
South Bend, IN 46617
Tel.: (574) 232-3538
jlewis@thklaw.com
mhays@thklaw.com

*Attorneys for Supreme*

# CERTIFICATE OF SERVICE

I hereby certify that on March 31, 2016, I electronically filed this document with the Clerk of the Court using the ECF system, which system sent notice of filing to all counsel of record.

 **/s/ Michael J. Hays**